|   |   |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **DISTRICT OF NEVADA** |

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No.: 2:16-cv-01692-APG-GWF |
| Plaintiff | **Order Granting in Part the Motion to Dismiss** |
| v. | [ECF No. 31] |
| OPERTURE, INC., et al., | |
| Defendants | |

This is a dispute over the effect of a non-judicial foreclosure sale conducted by defendant Indigo Homeowners' Association (Indigo). Indigo foreclosed on the property located at 9268 Lapeer Street in Las Vegas after the former homeowner ceased paying homeowners association (HOA) assessments. Plaintiff Bank of America, N.A. sues to determine whether the HOA foreclosure sale extinguished Bank of America's deed of trust encumbering the property.

Indigo moves to dismiss the claims against it for quiet title, unjust enrichment, wrongful foreclosure, negligence, negligence per se, breach of contract, misrepresentation, and tortious interference with contract.[1] I grant the motion in part.

**I. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual

---

[1] The motion to dismiss is directed at the original complaint. The parties stipulated for Bank of America to file an amended complaint, but only to correct the fact that page 3 of the original complaint was missing. ECF No. 64. The missing page does not affect the motion's arguments.

allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Quiet Title**

Indigo moves to dismiss the quiet title claim, arguing Bank of America did not pay all debts owed on the property, Bank of America cannot prove good title in itself because it is only a lienholder, and Indigo does not assert an adverse claim to the property. Bank of America responds that it need not pay all debts on the property to establish its lien priority. It also argues it has adequately alleged a claim to determine adverse interests in property.

Under Nevada Revised Statutes § 40.010, an "action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." "Thus, any person claiming an interest in the property may seek to determine adverse claims, even if that person does not have title to or possession of the property." *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *3 (D. Nev. Mar. 31, 2016). Accordingly, it is not fatal to Bank of America's claim that it asserts a lien interest rather than title to the property.

Additionally, Indigo is a proper party to the quiet title claim.[2] Bank of America challenges the validity of the sale Indigo conducted and the corresponding validity of the title

---

[2] The complaint does not assert the quiet title claim against Indigo. *See* ECF No. 33 at 10. However, because the parties act as if the claim was asserted against Indigo and the complaint

2

Indigo transferred to the purchaser at the HOA sale.  If the HOA foreclosure sale is invalidated, Indigo's superpriority lien might be reinstated as an encumbrance against the property.  Further, the existence and priority of that lien might still be in doubt where Bank of America alleges it tendered payment of that lien.  "The disposition of this action in the HOA's absence may impair or impede [Bank of America's] ability to protect its interests." *U.S. Bank, N.A. v. Ascente Homeowners Ass'n*, No. 2:15-cv-00302-JAD-VCF, 2015 WL 8780157, at *2 (D. Nev. Dec. 15, 2015).  Additionally, if Bank of America "succeeds in invalidating the sale without the HOA being a party to this suit, separate litigation to further settle the priority of the parties' respective liens and rights may be necessary." *Id.*  Thus, if Indigo is dismissed as a party, Bank of America would not be able to secure the complete relief it seeks. *See id.*; Fed. R. Civ. P. 19(a).  Accordingly, Indigo is a proper party to Bank of America's quiet title claim, and its motion to dismiss on this basis is denied.

Finally, Bank of America is not required to pay all debts on the property to determine whether its lien was extinguished.  The case Indigo cites, *Nebab v. Bank of Am., N.A.*, No. 2:10-cv-01865-KJD-GWF, 2012 WL 2860660 (D. Nev. July 11, 2012), relies on a California case, *Ferguson v. Avelo Mortg., LLC*, 126 Cal. Rptr. 3d 586, 591 (Cal. Ct. App. 2011).[3]  *Ferguson*, in turn, relies on another California case stating that a "mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 28 P.2d 673, 678 (Cal. 1934).  These cases have no application here because Bank of America is not the mortgagor trying to quiet title against the mortgagee.  I therefore deny the motion to dismiss on that basis.

---

alleges the HOA sale was void and seeks a declaration the sale was invalid, I will consider the parties' arguments.

[3] The California Supreme Court ordered *Ferguson* be depublished. *See Ferguson v. Avelo Mortg., LLC*, 2011 Cal. LEXIS 9825 (Cal. Sept. 14, 2011); *see also* Cal. Rules of Court, Rule 8.1115 (allowing California Supreme Court to order an opinion depublished).

3

**B. Common Law Claims**

Indigo argues that Bank of America's common law claims for wrongful foreclosure, unjust enrichment, and negligence have been superseded by the comprehensive statutory scheme set forth in Nevada Revised Statutes Chapter 116. Bank of America responds that Supreme Court of Nevada authority establishes that common law claims are not statutorily superseded by Chapter 116.

By statute, Nevada follows the "common law of England, so far as it is not repugnant to or in conflict with the . . . laws of this State." Nev. Rev. Stat. § 1.030; *see also State v. Hamilton*, 111 P. 1026, 1029 (Nev. 1910) (stating Nevada adopts the common law "except as specially abrogated or where unsuitable to our conditions"). Chapter 116, although comprehensive, does not reflect an intent to supersede all common law causes of action. To the contrary, § 116.1108 reflects that the common law remains applicable to Chapter 116 unless the two conflict:

> The principles of law and equity, including the law of corporations and any other form of organization authorized by law of this State, the law of unincorporated associations, the law of real property, and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter.

I therefore deny the motion to dismiss on this basis.

**C. Wrongful Foreclosure**

Alternatively, Indigo argues the wrongful foreclosure claim must be dismissed because the prior homeowner was in default at the time of the HOA foreclosure sale. Indigo also argues that a lienholder like Bank of America cannot assert a wrongful foreclosure claim because that claim belongs only to the trustor or mortgagor. Bank of America responds that there is no law

requiring a lienholder to show the homeowner was not in default to assert a wrongful foreclosure claim against an HOA.  Bank of America asserts that its claim is validly based on Indigo's violations of various provisions of Chapter 116.

A tortious wrongful foreclosure claim "challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (en banc).  While such a claim usually will be brought by the trustor or mortgagor, Indigo cites no authority for the proposition that only a trustor or mortgagor has standing to assert a wrongful foreclosure claim.  Because a junior lienholder like Bank of America has an interest in preventing a wrongful foreclosure that would extinguish its security interest, it has standing to assert a wrongful foreclosure claim.

Ordinarily, a wrongful foreclosure requires showing "that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983).  The Supreme Court of Nevada has not decided whether lienholders like Bank of America must prove non-breach and performance.  I predict[4] the Supreme Court of Nevada would not require such a showing from a junior lienholder where the basis for the wrongful foreclosure claim is independent of whether the homeowner was in default on the HOA assessments.  Here, Bank of America asserts the foreclosure was wrongful regardless of whether the prior owner was in default on his HOA assessments.

---

[4] In interpreting Nevada law, I am bound by the pronouncements of the Supreme Court of Nevada.  If that court has not addressed the particular issue before me, I "must predict how the state's highest court would resolve it." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002).

5

Moreover, Bank of America alleges that it paid the superpriority amount. ECF No. 66 at 4. This is an allegation that the superpriority lien was not in default at the time of the HOA foreclosure sale, so the HOA could not have foreclosed on the superpriority lien. Accepting Bank of America's allegations as true, there was a remaining non-superpriority lien that Indigo foreclosed on after Bank of America paid the superpriority amount. *Id.* at 4-5. However, foreclosure on a subpriority lien would not extinguish Bank of America's deed of trust. Thus, Bank of America is asserting the foreclosure was wrongful if it extinguishes the deed of trust even though the superpriority lien was satisfied (and thus there was no breach as to the superpriority amount) prior to the sale. Bank of America therefore has pleaded sufficient facts to state a wrongful foreclosure claim even if it has to allege lack of a breach. *See Bank of Am., N.A. v. S. Valley Ranch Cmty. Ass'n*, No. 2:16-cv-01013-KJD-CWH, 2016 WL 4168733, at *4 (D. Nev. Aug. 4, 2016).

**D. Negligence and Negligence Per Se**

Indigo argues the negligence claims must be dismissed because Indigo owed no duty to Bank of America and because the economic loss doctrine bars the claims. Indigo also argues that because the foreclosure statute is designed to protect the general public and not a particular class of persons, it cannot support a negligence per se claim. Bank of America responds that Indigo had a duty to conduct the foreclosure in compliance with Chapter 116. Bank of America contends it adequately alleged Indigo breached that duty when Indigo failed to announce that the superpriority lien was satisfied before the sale, did not comply with the statutory notice provisions, and improperly included collection costs in the lien. Bank of America contends the economic loss doctrine does not apply because Indigo owes it duties arising independent of any contract.

### 1. Negligence Per Se

Bank of America did not respond to Indigo's motion regarding the negligence per se allegations. I therefore grant the motion to dismiss these allegations as unopposed. LR 7-2(d).

### 2. Economic Loss Doctrine

Under Nevada law, the "economic loss doctrine is a rule of judicial creation" that "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012) (quotation omitted). The doctrine generally prohibits unintentional tort actions in which the plaintiff seeks to recover purely economic losses. *Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 86 (Nev. 2009) (en banc). Absent "personal injury or property damage, a plaintiff may not recover in negligence for economic losses," unless an exception applies. *Id.* at 87.

Determining whether the doctrine applies is a two-step process. First, I determine "whether the damages are purely economic in nature." *Id.* at 86. Second, I determine whether the claim at issue falls within the economic loss doctrine's scope by reference to the policy behind the doctrine and its recognized exceptions. *Id.*

Bank of America's losses are purely economic. Purely economic loss means "the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 993 P.2d 1259,

/ / / /

/ / / /

1263 (Nev. 2000) (quotation omitted).[5] Bank of America seeks as damages "the fair market value of the Property or the unpaid balance of the . . . Loan and . . . Deed of Trust . . . ." ECF No. 66 at 20. Bank of America thus seeks essentially replacement costs or lost profits without any personal injury or property damage. Bank of America contends it suffered something beyond economic losses because it lost its security interest in a particular parcel of property and real property is unique. But Bank of America would not obtain the property if it prevailed on its negligence claim. It would be entitled only to damages against Indigo. Additionally, having a lien extinguished is not property damage within the doctrine's meaning because it is not physical damage to property.

Bank of America's claim falls within the doctrine's scope and no exception applies. "The doctrine expresses the policy that the need for useful commercial economic activity and the desire to make injured plaintiffs whole is best balanced by allowing tort recovery only to those plaintiffs who have suffered personal injury or property damage." *Terracon Consultants W., Inc.*, 206 P.3d at 87. It is "driven by financial considerations," and "works to reduce the cost of tort actions, but still provides tort victims with a remedy because less expensive alternative forms of compensation, such as insurance, generally are available to a financially injured party." *Id.* at 88.

The doctrine also seeks to balance "the disproportion between liability and fault." *Id.* "[C]utting off tort liability at the point where only economic loss is at stake without accompanying physical injury or property damage provides . . . incentives and disincentives to engage in economic activity or to make it safer." *Id.* (quotation omitted). "On the other hand, imposing unbounded tort liability for pure financial harm could result in incentives that are

---

[5] *Calloway* was superseded in part by statute in relation to construction defect negligence claims brought under Nevada Revised Statutes Chapter 40. *See Olson v. Richard*, 89 P.3d 31, 33 (Nev. 2004). That statute does not apply here.

8

perverse, such as insurance premiums that are too expensive for the average economic actor to afford." *Id.* (quotation omitted).

There are exceptions to the doctrine, such as where "policy concerns about administrative costs and a disproportionate balance between liability and fault are insignificant, or other countervailing considerations weigh in favor of liability." *Id.* "For example, negligent misrepresentation is a special financial harm claim for which tort recovery is permitted because without such liability the law would not exert significant financial pressures to avoid such negligence." *Id.* at 76-77.

Here, less expensive alternative forms of compensation, such as insurance, generally are available to lenders like Bank of America. Additionally, Bank of America has other means to protect itself financially, including this quiet title action against the subsequent purchaser. If Bank of America is able to show the HOA acted improperly in conducting the sale, then the sale may be voided and the deed of trust reinstated. Moreover, lenders have many other steps they can take to protect themselves before HOA foreclosure sales take place. *See SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 413-14 (Nev. 2014) (en banc) (stating junior lienholders "could have paid off the [HOA] lien to avert loss of its security" or "could have established an escrow for [HOA] assessments to avoid having to use its own funds to pay delinquent dues"); *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *8 (D. Nev. Mar. 31, 2016) (identifying additional options such as attending the sale and purchasing the property or suing the HOA to require it to accept payment in satisfaction of the superpriority lien).

/ / / /

/ / / /

9

Imposing tort liability against an HOA in these circumstances would be a tremendous disincentive to HOAs conducting foreclosures. The HOA can hope to obtain only a few thousand (sometimes only a few hundred) dollars by enforcing its lien through foreclosure. But if the HOA is negligent in conducting the sale, it faces tens or hundreds of thousands of dollars in liability from the lender whose deed of trust is extinguished. HOAs likely would cease conducting foreclosure sales if faced with that kind of liability, and that would be contrary to the purpose behind Nevada's law providing a mechanism for HOAs to obtain payment for past due assessments through foreclosure. As the Supreme Court of Nevada has explained, "[a]n HOA's sources of revenues are usually limited to common assessments." *SFR Investments Pool 1*, 334 P.3d at 413 (quotation omitted). "This makes an HOA's ability to foreclose on the unpaid dues portion of its lien essential for common-interest communities." *Id.* at 414. "Otherwise, when a homeowner walks away from the property and the first deed of trust holder delays foreclosure, the HOA has to either increase the assessment burden on the remaining unit/parcel owners or reduce the services the association provides (e.g., by deferring maintenance on common amenities)." *Id.* (quotation omitted). The superpriority lien thus was intended to "avoid having the community subsidize first security holders who delay foreclosure, whether strategically or for some other reason." *Id.* That purpose will be undermined if HOAs cease conducting foreclosures out of fear of disproportionate liability.

There is no need to create an exception to the economic loss doctrine to incentivize HOAs to perform their foreclosure sales properly. An HOA who does not conduct a sale properly faces the prospect of the sale being unwound through a quiet title action, resulting in increased litigation and foreclosure expenses the HOA can ill afford. No "strong countervailing

/ / / /

considerations weigh in favor of imposing liability" against HOAs for negligently performing foreclosure sales. *Terracon Consultants W., Inc.*, 206 P.3d at 86.

In sum, Bank of America seeks purely economic losses, its negligence claim falls within the economic loss doctrine's scope, and there is no need to carve out an exception to the doctrine in these circumstances. I therefore grant Indigo's motion to dismiss the negligence claim.

### E. Contract and Misrepresentation Claims

Indigo argues the contract and misrepresentation claims must be dismissed because there was no contract between Indigo and Bank of America or between Indigo and the prior homeowner. Indigo further argues that even if the Covenants, Conditions, and Restrictions (CC&Rs) constitute a contract to which Bank of America is a third party beneficiary, Bank of America cannot rely on the mortgage protection clause because it conflicts with Nevada Revised Statutes § 116.1104. Bank of America responds that it is a third party beneficiary of the CC&Rs, which is a contract between the property owners in the community. Bank of America contends that an HOA can adopt a mortgage protection clause without that clause being invalidated by § 116.1104.

Bank of America's contract and misrepresentation claims are based on section 8.16 of Indigo's CC&Rs. ECF No. 66 at 8, 16. That section states:

> Breach of any of the covenants in this Article VIII shall not defeat or render invalid the lien of any First Security Interest made in good faith and for value as to said Lots or Property, or any part thereof, but such provisions, restrictions, or covenants shall be binding and effective against any Owner whose title thereto is acquired by foreclosure, Trustee's sale or otherwise.

ECF No.66-11 at 32. Article VIII however, makes no reference to HOA assessments. *Id.* at 30-33. Assessments are covered by Article IV of the CC&Rs. *Id.* at 19-23. Section 4.12 specifically preserves the HOA's superpriority lien over a first deed of trust. *Id.* at 22.

Further, the Supreme Court of Nevada has already ruled that an HOA cannot waive its right to a superpriority lien. *RLP-Vervain Court, LLC v. Wells Fargo*, No. 65255, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) ("[A]n association may not waive its right to a priority position for the association's superpriority lien."); *SFR Investments Pool 1*, 334 P.3d at 418-19. I decline Bank of America's invitation to ignore that court's binding interpretation of Nevada law. I therefore dismiss the contract and misrepresentation claims with prejudice.

### F. Unjust Enrichment

Indigo argues the unjust enrichment claim should be dismissed because Indigo does not own the property, so Bank of America's voluntary payment of taxes, insurance, and association assessments since the foreclosure sale have not unjustly enriched Indigo. Bank of America responds that it has alleged Indigo retained more than the superpriority amount following the sale, even though items like collection costs were junior to Bank of America's deed of trust.

"[U]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Coury v. Robison*, 976 P.2d 518, 521 (Nev. 1999) (en banc) (quotation omitted). In the section of the complaint entitled "unjust enrichment," Bank of America does not allege that Indigo retained proceeds from the HOA sale that belong to Bank of America. Reading the complaint as a whole, Bank of America alleges elsewhere that it paid $5,616.31 to pay off the superpriority lien, that Indigo sold the property for $16,500, and that the deed upon sale identified the amount of the unpaid debt owed to Indigo as $1,952. ECF No. 66 at 4-5. But Bank of America does not allege the correct amount of the superpriority lien or the total

proceeds Indigo retained. Thus, the complaint does not plausibly allege Indigo retained money that in equity and in good conscience belongs to Bank of America.

Bank of America also alleges that if the deed of trust was extinguished by the HOA sale, then Indigo has been unjustly enriched because Bank of America has been paying taxes, insurance, and HOA assessments on the property since the HOA sale. Bank of America does not explain how Indigo is unjustly enriched by any of these payments. I therefore grant the motion to dismiss the unjust enrichment claim, with leave to amend.

### F. Tortious Interference

Indigo argues the tortious interference claim should be dismissed because there are no allegations that Indigo knew of Bank of America's contract with the prior homeowner, that Indigo caused the prior homeowner to stop making mortgage payments, or that Indigo intended to disrupt that relationship. Bank of America did not respond to this claim. I therefore grant Indigo's motion as unopposed as to this claim. *See* LR 7-2(d).

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendant Indigo Homeowners Association's motion to dismiss **(ECF No. 31) is GRANTED in part** as more fully set forth in this order.

IT IS FURTHER ORDERED that on or before July 17, 2018, Bank of America shall file an amended complaint if it seeks to cure the deficiencies identified in this order.

DATED this 2nd day of July, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE